UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QISHEN XUE,

Plaintiff,

- against -

THE TRUSTEES OF COLUMBIA UNIVESRITY IN THE CITY OF NEW YORK, *et al.*,

Defendants.

23-CV-7502 (VSB)

**OPINION & ORDER**

Appearances:

Qishen Xue
Brooklyn, NY
*Pro se Plaintiff*

Susan Deegan Friedfel
Jackson Lewis P.C.
White Plains, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

*Pro se* Plaintiff Qishen Xue ("Plaintiff" or "Xue") brings this action against the Trustees of Columbia University in the City of New York, Columbia Global Centers, Lee Bollinger ("Bollinger"), Madeleine Zelin ("Zelin"), and Linda Amrou ("Amrou") (together, "Defendants") alleging disability discrimination and negligence. Before me is Defendants' motion to dismiss the Amended Employment Discrimination Complaint ("Amended Complaint") in part pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 19.) For the reasons articulated below, Defendants' motion to dismiss in part is GRANTED and Plaintiff is given leave to amend part of

their disability discrimination claims.

## I. **Factual Background**[1]

Plaintiff was a former candidate for a master's degree in the East Asian Languages and Cultures department at Columbia University ("Columbia" or the "University"). (Am. Compl. ¶ 2.) Plaintiff was also a recipient of "Columbia Global Center's Scholarship for Displaced Students." (*Id.* ¶ 1.) They[2] arrived at Columbia in August 2020. (*Id.* ¶ 2.)

Sometime in November 2020, Plaintiff received a news release titled "Columbia Welcomes First Cohort of Displaced Scholars," where they were described as a "political prisoner." (*Id.* ¶ 3.) Plaintiff emailed the Columbia Global Center stating that they were not a political prisoner. (*Id.* ¶ 4.) Specifically, on November 13, 2020, Plaintiff emailed Linda Amrou and Marika Olsen stating the following:

> This is [Plaintiff] writing, thanks for providing the link for an exclusive look at the incredible landing page.
>
> In addition, regarding the "Meet the Students" page, there appears to be a minor factual issue. It turns out one of my parents is said political prisoner, and I've included the incident due to China's family-oriented policy on political dissent.
>
> Hence, perhaps phrases like "socio-political refugee" or "second-generation political prisoner" might be more precise? Just some thoughts.
>
> Apologies for the inconvenience and thanks for your understanding.

---

[1] The facts set forth herein are taken from allegations in the Amended Complaint. (Doc. 6 ("Am. Compl.").) The 12-page Amended Complaint contains two parts: the first six pages include a filled-out form for employment discrimination complaints and Plaintiff's addendum regarding Defendants Bollinger and Zellin, and the later six pages are Plaintiff's description entitled the "Chronological Development of Events." Pin cites to page numbers in the Amended Complaint reference page numbers in the first half of the Amended Complaint or in the last three pages, pages 10–12. Pin cites to paragraph numbers in the Amended Complaint reference paragraphs numbers in the second half of the Amended Complaint, on pages 7–9, in the Chronological Development of Events.

I assume Plaintiff's allegations in the Amended Complaint to be true for purposes of the motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] Based on the briefings submitted in this action, Plaintiff uses they/them pronouns.

(Doc. 21-2.)[3]

On November 19, 2020, the program officer Linda Amrou replied, "We have amended your bio and will let you know when the site is live." (Am. Compl. ¶ 4.) However, when the website went live on December 4, 2020, Plaintiff was still described as a "political prisoner." (*Id.* ¶ 5.) "The news was forwarded to other media outlets too." (*Id.*)

In January 2021, Plaintiff began to suffer adverse issues related to their physical and psychological health. (*Id.* ¶ 6.) Plaintiff worried about their "well-being and safety," and could not properly sleep or eat. (*Id.*) Plaintiff "attempted suicide [by] not eating for six to seven days." (*Id.*) Between February and March 2021, Plaintiff had a nervous breakdown and was hospitalized, where they were "diagnosed with bipolar I disorder and suspected anorexia nervosa." (*Id.* ¶ 7.)

Plaintiff's health issues affected their studies and career aspiration to be a writer. (*Id.*) In or about April 2021, Plaintiff made several attempts to return to Columbia from their leaves of absence, including by having a psychiatrist submit a letter stating, "Currently, [Plaintiff] is not on any psychiatric medications and in my clinical opinion, is ready to return to school." (*Id.* ¶ 8.) Plaintiff missed a scheduled phone call with the University's psychiatrist Dr. Allan Cassorla. (*Id.*) Plaintiff then tried to reschedule the call but "there was no follow-up." (*Id.*) The University denied Plaintiff's request to return for the summer term. (*Id.*)

In preparation for the Fall 2021 term, educational officer Sophia Cheng and associate Dean of Academic & Student Affairs at the Graduate School of Arts & Sciences Richard

---

[3] At this stage of the proceedings, I may consider the Amended Complaint and "any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks omitted). I find that the November 19, 2020 email between Plaintiff and Defendant Amrou is incorporated by reference because the Amended Complaint quotes from that email and it serves, at least in part, as a basis for Plaintiff's claims, particularly regarding Defendant Amrou. (*See* Am. Compl. ¶ 4.)

Slusarczyk requested that Plaintiff submit an updated letter from a physician regarding the status of Plaintiff's health, (*id.* ¶ 9), because their "psychiatrist ha[d] changed position[s] and [Plaintiff] ha[d] only seen [their] new psychiatrist once." (*Id.*) Plaintiff resumed their studies three weeks into the fall semester when "most classes [were] already full." (*Id.*)

In October 2021, Plaintiff suffered more health issues. (*Id.* ¶ 10.) Plaintiff was hospitalized from October 5 to October 13, 2021 because of a manic episode "since the former issues were not resolved." (*Id.*) Plaintiff was hospitalized again from October 29 to November 16, 2021 "due to the side effects of medication withdrawal." (*Id.* ¶ 11.) In December 2021, Plaintiff took an additional leave of absence for the upcoming semester. (*Id.* ¶ 12.)

On January 12, 2022, Plaintiff was notified that Professor Madeleine Zelin would no longer be their advisor. (*Id.* ¶ 13.) Plaintiff "think[s] it might [have] happened because [they] [were] described as a political prisoner and/or has bipolar disorder, which triggered another episode of depression and [they] didn't return to classes." (*Id.*)

Plaintiff continued to suffer health issues in the fall of 2022. (*Id.* ¶ 14.) They were hospitalized for the fourth time from September 1 to September 26, 2022 because "the news release issue was still not resolved." (*Id.*) Plaintiff "stopped eating and drinking for nearly a week and attempted suicide." (*Id.*) They were hospitalized for a fifth time from October 11 to November 3, 2022 because of withdrawal symptoms Plaintiff suffered from taking a lithium medication. (*Id.* ¶ 15.) Side effects from Plaintiff's medications included weight gain, impairment of memory and creativity, and "constant fatigue and drowsiness" which affected Plaintiff's ability to write. (*Id.*) "The projected long-term impairment involves tolls on employment, the economy of lost time, cognitive damages and blocking of creative pursuit." (*Id.* ¶ 16.)

On March 9, 2023, Plaintiff was notified that their candidacy as a master's student in the Department of East Asian Languages and Cultures was terminated. (*Id.* ¶ 17.) On March 14, 2023, Plaintiff submitted a letter of appeal to Dean Carlos Alonso of the Graduate School of Arts & Sciences with a description of the December 2020 news release that depicted them as a political prisoner. (*Id.* ¶ 18.) This letter also described Plaintiff's bipolar disorder diagnosis, psychological breakdown, and the leaves of absence Plaintiff took for multiple semesters. (*Id.*) Plaintiff received a reply, but their concerns went unaddressed. (*Id.*)

On March 27, 2023, Plaintiff emailed the then-President of Columbia, Lee Bollinger, about the events leading up to the termination of their studies. (*Id.* ¶ 19.) Plaintiff explained that they were not a political prisoner despite the December 2020 news release describing them as one. (*Id.*) Plaintiff wrote that the University's reference to them as a "political prisoner" "deprives [Plaintiff] the chance[] of . . . ever going back to China" and that Plaintiff "fear[s] persecution from the Chinese authority." (Doc. 21-3.)[4] Plaintiff further described their bipolar disorder diagnosis, psychological breakdown, two leaves of absence, and multiple hospitalizations. (Am. Compl. ¶ 19.) Plaintiff outlined the correspondence they had with professors and deans regarding the termination of their status as a student. (Doc. 21-3 at 1.) Plaintiff stated that they had been "living off family and friends' donations" for the past two years because they do not have a work permit, and that "going back to China is out of the option[]." (*Id.*) Plaintiff sought Columbia's "assistance under the hope to explore palpable solutions together." (*Id.*) Plaintiff did not receive a response. (Am. Compl. ¶ 19.)

---

[4] I find that the March 27, 2023 email from Plaintiff to Defendant Bollinger is incorporated by reference because the Amended Complaint quotes from that email and it serves as a basis for Plaintiff's claims, particularly regarding Defendant Bollinger. (*See* Am. Compl. ¶ 19.)

## II. **Procedural History**

On August 22, 2023, *pro se* Plaintiff filed a complaint against Columbia, (Doc. 1), and a request to proceed in forma pauperis ("IFP"), (Doc. 2). On September 8, 2023, Chief Judge Laura Taylor Swain granted Plaintiff's IFP application. (Doc. 3.) After obtaining leave to amend, Plaintiff filed the Amended Complaint on December 4, 2023. (*See* Am. Compl.) The Amended Complaint asserts two claims. First, Plaintiff claims that they suffered employment discrimination on the basis of their disability or perceived disability of "severe bipolar I disorder" in violation of the Americans with Disabilities Act of 1990. (*Id.* at 5.) Second, Plaintiff asserts that "negligence of paperwork of my employer caused psychological trauma." (*Id.*) Plaintiff alleges two "adverse employment action[s]"—termination from the master's program and failure to accommodate their disability. (*Id.* at 6.) The Amended Complaint asserts claims against "Columbia University in the City of New York," Columbia Global Centers, and the three individual defendants Linda Amrou, Lee Bollinger, and Madeleine Zelin. (*Id.* at 1, 2–4.) Plaintiff did not file a charge of discrimination with nor did they receive a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 10.)

Plaintiff seeks relief in the form of (1) "a public statement" from the University "to redact, re-edit, or readdress the inaccurate statement" describing them as a political prisoner, and (2) damages ranging from $250,000 for "associated costs incurred, $8.5 millions of loss of potential employment, and $128 millions of psychological compensation." (*Id.* at 10–11.) Plaintiff also seeks damages from each of the individual defendants. (*Id.*) In the Amended Complaint, Plaintiff also consented to receiving documents electronically. (*Id.* at 12.) On March 25, 2024, Plaintiff requested pro bono counsel. (Doc. 8.)

On March 29, 2024, this case was reassigned to me. On April 1, 2024, I issued an order

directing the Clerk of Court to issue summonses to the U.S. Marshals Service for service on the Defendants and denying Plaintiff's request for pro bono counsel without prejudice to renewal at a later date. (Doc. 10.) I also stated that I construed the Amended Complaint "as asserting claims under the Rehabilitation Act of 1973 and state law." (*Id.* at 1.) Finally, the order stated that "Plaintiff may receive court documents by email by completing the attached form, Consent to Electronic Service," with a hyperlink to the consent form. (*Id.* at 3.) To date, Plaintiff has not returned a signed consent form.

On July 8, 2024, Defendants filed a motion to dismiss Plaintiff's Amended Complaint in part, (Doc. 19), a memorandum of law in support, (Doc. 20 ("Mem.")), and a declaration in support along with various exhibits, (Doc. 21). On July 18, 2024, Plaintiff filed an opposition. (Doc. 26 ("Opp'n."); *see also* Doc. 37 (noting that I will "consider [the return motion] to be Plaintiff's opposition to the pending motion to dismiss").) On July 29, 2024, Defendants filed a reply, (Doc. 24 ("Reply")), and an accompanying declaration, (Doc. 25). On September 24, 2024, I issued an order staying discovery pending my decision on the motion to dismiss. (Doc. 35.)

## III. <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of

considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Further, pleadings of a *pro se* party should be read "to raise the strongest arguments that they suggest." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003)). Nevertheless, a *pro se* complaint must still state a plausible claim for relief, and "courts have the power and duty to dismiss complaints that contain only conclusory, frivolous, or implausible allegations." *See Walker v. Schult*, 717 F.3d 119, 124, 130 (2d Cir. 2013). In other words, "the

duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted) (alterations adopted).

## IV. Discussion[5]

I have liberally construed Plaintiff's Amended Complaint as attempting to assert causes of action in discrimination and negligence. However, Plaintiff fails to state plausible claims of discrimination against the individual defendants or negligence against all defendants.

### A. *Americans with Disabilities Act and Rehabilitation Act Claims*

The Amended Complaint asserts a claim under the Americans with Disabilities Act ("ADA") based on Plaintiff's disability of "severe bipolar I disorder." (Am. Compl. 5.) Despite my April 1, 2024 order stating that I "construe[] the complaint as asserting claims under the Rehabilitation Act of 1973 and state law," (Doc. 10 at 1), the parties briefed the claims as arising under the ADA. Accordingly, I analyze claims as being made either under the ADA or the Rehabilitation Act.

#### 1. Applicable Law

"[T]he ADA's first three titles proscribe discrimination against individuals with disabilities in employment and hiring (Title I), access to public services (Title II), and public accommodations (Title III)." *Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012) (internal quotation marks omitted). Title I of the ADA prohibits employment

[5] Plaintiff makes much about Defendants' reference to Defendant Zelin as "Madeline Zelin" instead of "Madeleine Zelin." (Opp'n 1–2.) Plaintiff claims that Defendants' documents referencing "Madeline Zelin" are therefore "legally null and void" and that defense counsel is "not qualified to represent the defendants." (*Id.* at 2–3.) This is clearly a typographical error, and defense counsel has acknowledged as much. (Reply 1 n.1.) I do not find that these typographical errors impact the substantive consideration of the legal issues addressed in this Opinion & Order. Indeed, Plaintiff has also made non-material errors. (*See, e.g.*, Am. Compl. 1 (listing "Lee Boillinger" in the case caption); Mem. 1 n.1 (noting that defendants "Columbia University in the City of New York" and "Columbia Global Centers" are not the appropriate legal entities).) I deem these typographical errors to be harmless, and they do not raise any issues regarding service, due process, or any other legal defect.

discrimination based on disability. 42 U.S.C. § 12112(a). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title III of the ADA requires "reasonable modifications in [public accommodations'] policies, practices, or procedures." 42 U.S.C. § 12182(b)(2)(A)(ii).

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). "Program or activity," in turn, is defined as

> all of the operations of [] (A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government.

*Id.* § 794(b)(1).

**2. Application**

The Amended Complaint does not specify which of the ADA's three Titles was violated, so I analyze Plaintiff's allegations under each Title. As an initial matter, any Title I claim is doomed because Plaintiff failed to satisfy Title I's administrative exhaustion requirement. *See McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007) (per curiam) ("The language and structure of the ADA demonstrate that Title III, unlike Title I, does not require administrative exhaustion.").[6] "[A] Title I plaintiff is required to exhaust her administrative

[6] The Second Circuit has indicated that Title II does not appear to have an administrative exhaustion requirement.

remedies before filing a federal suit: she must make a timely complaint to the EEOC, receive a right-to-sue letter, and then file suit within 300 days." *Transp. Workers Union of Am., Loc. 100, AFL-CIO v. New York City Transit Auth.*, 342 F. Supp. 2d 160, 171 (S.D.N.Y. 2004). Plaintiff has satisfied none of these requirements. In the Amended Complaint, Plaintiff concedes that they did not file a discrimination charge with the EEOC or any other government agency and has not received a Notice of Right to Sue from the EEOC. (Am. Compl. 10). Accordingly, Plaintiff's claims under Title I of the ADA must fail. *See Barbuto v. Syracuse Univ.*, No. 23-CV-245, 2026 WL 820769, at *12 (N.D.N.Y. Mar. 25, 2026) (dismissing plaintiff's Title I claim under the ADA because he did not satisfy the administrative exhaustion requirements before bringing the claim, which require plaintiffs to "file an EEOC charge within 180 days of the alleged discrimination, or within 300 days if the plaintiff has already filed a charge with the state or local employment agency"). Further, "[c]laims brought under Title I of the ADA must be brought against an employer, employment agency, labor organization, or joint labor-management committee." *Warwick v. Schultz*, No. 23-CV-5242, 2023 WL 5240926, at *2 n.1 (S.D.N.Y. June 27, 2023) (internal quotation marks omitted). As Defendants note, any Title I claims against the Columbia defendants or any of the individual defendants must fail because Plaintiff does not allege, nor could they, that they were employed by any defendant. *See Mugno v. Societe Internationale De Telecommunications Aeronautiques, Ltd.*, No. 05-CV-2037, 2007 WL 316572, at *4 (E.D.N.Y. Jan. 30, 2007) ("Here, under Title I, [Plaintiff's] claim of an ADA violation against [Defendant] is fatally flawed for the simple reason that [Defendant] is not [his] employer.") Thus, the Title I claims must be dismissed against all defendants.

To the extent Plaintiff is asserting claims under Title II of the ADA, they also fail, as

---

*See Mary Jo C. v. New York State & Loc. Ret. Sys.*, 707 F.3d 144, 170 n. 11 (2d Cir. 2013).

Defendants argue in their motion to dismiss. (Mem. 5 n.4.) "Columbia University is a private institution that was founded in 1754." *Columbia University*, U.S. NEWS, https://www.usnews.com/best-colleges/columbia-university-2707 (last accessed Apr. 14, 2026). Therefore, any Title II claims are doomed because "private universities . . . are not public entities subject to Title II, even if they receive government funding." *Wiltz v. New York Univ.*, No. 19-CV-3406, 2019 WL 8437456, at *7 (S.D.N.Y. Dec. 23, 2019) (collecting cases), *report and recommendation adopted*, 2020 WL 614658 (S.D.N.Y. Feb. 10, 2020). Similarly, Plaintiff's claims against the individual defendants also fail because "Title II claims may be brought only against a public entity; individuals cannot be named as defendants under that provision." *Torres v. Mills*, No. 12-CV-2192, 2012 WL 13042631, at *1 (S.D.N.Y. May 9, 2012).

This leaves federal claims under Title III of the ADA and the Rehabilitation Act.[7] To state a claim under either the ADA or the Rehabilitation Act, a plaintiff must show that: "(1) the plaintiff is a qualified individual with a disability; (2) the defendant is an entity subject to the Acts; and (3) the plaintiff was denied the opportunity to participate in or benefit from . . . services, programs, or activities or was otherwise discriminated against on the basis of disability." *Costin v. Glens Falls Hosp.*, 103 F.4th 946, 953 (2d Cir. 2024) (internal quotation marks omitted) (alterations adopted).

Defendants argue that Plaintiff's claim against the individual defendants must be dismissed because Title III of the ADA "does not permit individual employees to be held liable for actions taken in connection with their employment." (Mem. 5.) "Under Title III of the ADA, 'the question of whether a person is a proper defendant under the ADA turns [ ] on . . . whether

[7] Both Title III of the ADA and the Rehabilitation Act apply to Columbia because it receives federal funding. *See* 42 U.S.C. § 12181(7)(J) (defining "public accommodation" to include, among other things, a "postgraduate private school").

the defendant *owns*, *leases*, or *operates* a place of public accommodation within the meaning of the ADA.'" *Askins v. Weinberg*, No. 19-CV-8793, 2022 WL 4567695, at *7 (S.D.N.Y. Sept. 29, 2022) (quoting *Coddington v. Adelphi Univ.*, 45 F. Supp. 2d 211, 215 (E.D.N.Y. 1999)) (emphasis in original). "To operate a place of public accommodation, an individual must be responsible for making decisions regarding disabled persons." *Id.* (internal quotation marks omitted) (alterations adopted). Here, "Plaintiff has not alleged any facts demonstrating that any of the individual defendants 'exerted any influence over [Columbia's] accommodation policies,' or that it is an individual, rather than the 'institution that has the power to make any accommodations required by law.'" *Id.* (quoting *Schenk v. Verizon*, No. 10-CV-6281, 2011 WL 1044560, at *1 (S.D.N.Y. Mar. 17, 2011) and *Coddington*, 45 F. Supp. 2d at 217).

Moreover, even if Plaintiff was able to bring suit against the individual defendants, their ADA and Rehabilitation Act claims fail on their merits. The Amended Complaint asserts two adverse employment actions—Plaintiff's termination from the master's program and failure to accommodate their disability. (Am. Compl. 6.) With regard to termination, Plaintiff fails to point to any evidence that their status as a master's degree student was terminated "on the basis of" Plaintiff's bipolar I disorder. There is no allegation that the termination would not have occurred but for their disability.[8] *Burgess v. New Sch. Univ.*, No. 23-CV-4944, 2024 WL 4149240, at *12 (S.D.N.Y. Sept. 11, 2024) (dismissing disability discrimination and retaliation claim where the plaintiff "points to no direct evidence of the defendants' intent to discriminate on the basis of [the plaintiff's] alleged disabilities"); *see also De Figueroa v. New York*, 403 F.

[8] The only connection Plaintiff draws to their disability is that Plaintiff "think[s]" that Defendant Zelin was no longer their advisor because Plaintiff "was described as a political prisoner and/or has bipolar disorder." (Am. Compl. ¶ 13.) However, Plaintiff does not allege additional facts to support why they "think" that way, (*id.*); nor does Plaintiff assert the legal claim that their separation from advisor Defendant Zelin was an adverse employment action.

Supp. 3d 133, 160 (E.D.N.Y. 2019) ("The fact that the plaintiff may be a member of a protected group and something happens to [the plaintiff] that [the plaintiff] does not like is not nearly sufficient to constitute an employment discrimination claim.") (dismissing disability discrimination claim)). Accordingly, Plaintiff's claims regarding their termination from the master's program are dismissed against the individual defendants.

With regard to reasonable accommodation, the Amended Complaint is unclear concerning what accommodation, if any, was requested, or what, when, why, or by whom any request was denied. "To state a claim under the ADA based on a failure-to-accommodate theory, the plaintiff must allege that: (1) the plaintiff is a person with a disability as defined in the ADA; (2) an employer covered by the statute had notice of the disability; (3) with reasonable accommodations, the plaintiff could perform the essential functions of the job at issue; and (4) the covered employer refused to make such accommodations." *Burgess*, 2024 WL 4149240, at *13 (internal quotation marks omitted) (alterations adopted). Construed liberally, *pro se* Plaintiff's allegations may be that the individual defendants failed to accommodate by delaying or denying their attempts to return to school from Plaintiff's various leaves of absence. (Am. Compl. ¶¶ 8–9.) However, Plaintiff does not allege that any such delay or denial was "on the basis" of their disability. In fact, the Amended Complaint indicates that educational officer Sophia Cheng and associate Dean Richard Slusarczyk informed Plaintiff in August 2021 of the next steps Plaintiff must take so that they could return to classes. (*Id.* ¶ 9.) They explained that Plaintiff was required to "submit an updated letter" regarding the status of Plaintiff's health because their "psychiatrist ha[d] changed position" and Plaintiff had "only seen [their] new psychiatrist once." (*Id.*) These facts do not indicate that Defendants denied any purported request for an accommodation; rather, they merely asked for updated documentation concerning

Plaintiff's health.

With regard to the March 14, 2023 letter of appeal to Dean Carlos Alonso, (*id.* ¶ 18), Plaintiff states that their appeal received a reply, but their appeal was "not addressed." (*Id.*) This allegation does not contain sufficient details, such as what that reply was or why that reply did not address Plaintiff's concerns. In short, the Amended Complaint does not contain any factual allegations sufficient to show that Plaintiff suffered any discrimination from the individual defendants "on the basis" of their disability. Indeed, Plaintiff was allowed to return to classes multiple times after multiple leaves of absence, indicating that Columbia apparently accommodated their numerous health issues on different occasions. *Malloy v. City of New York Dep't of Homeless Servs.*, No. 21-CV-4839, 2022 WL 4227262, at *5 (S.D.N.Y. July 28, 2022) (dismissing Title III claims where there was "no allegation that [plaintiff] was treated differently or not accommodated on the basis of any disability" and plaintiff "was eventually permitted to access the shelter after the initial argument" with defendants), *report and recommendation adopted*, 2022 WL 4227095 (S.D.N.Y. Sept. 13, 2022). Because Plaintiff offers insufficient allegations regarding discrimination "on the basis" of their bipolar I disorder, Plaintiff's Title III claims against the individual defendants must also fail. Similarly, Plaintiff's claims under the Rehabilitation Act are doomed because there is no allegation that Plaintiff was denied any opportunity "'by reason' of [their] disability, let alone 'solely by reason' of [their] disability, as the Rehabilitation Act requires." *Harris v. Mills*, 572 F.3d 66, 75 (2d Cir. 2009) (citation omitted).

Accordingly, Defendants' motion to dismiss in part is GRANTED. Plaintiff's claims under Title I and Title II of the ADA are dismissed against all defendants with prejudice and without leave to amend because it would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112

(2d Cir. 2000) (holding that leave to replead would be futile where the "problem with [Plaintiff's] causes of action is substantive" and "better pleading will not cure it"). Plaintiff's claims under Title III of the ADA and the Rehabilitation Act are dismissed without prejudice against the individual defendants with leave to amend, as detailed *infra*.[9]

### B. *Negligence*

Plaintiff claims "the negligence of paperwork of [their] employer caused psychological trauma." (Am. Compl. 5.) Defendants argue that the negligence claims should be dismissed against all Defendants because (1) Plaintiff fails to allege any duty owed by Defendants to Plaintiff related to the description of them as a "political prisoner" and (2) the psychological harms Plaintiff suffered were not reasonably foreseeable. (Mem. 7–8.)

To state a claim sounding in negligence under New York law, "a plaintiff's allegations must establish '(1) that the defendant owed the plaintiff a cognizable duty of care, (2) that the defendant breached that duty, and (3) that the plaintiff suffered damages as a proximate result of that breach.'" *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 458 (S.D.N.Y. 2012) (quoting *King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997)). Plaintiff's negligence claim fails because the Amended Complaint does not plausibly allege Defendants owed Plaintiff a duty and that their various health issues were a proximate result of Defendants' conduct.

Plaintiff fails to plead any duty owed by Defendants to Plaintiff in relation to these claims or how that duty was breached. "The question of the existence and scope of a defendant's duty is a legal issue for the court to resolve." *La Russo v. St. George's Univ. Sch. of Med.*, 936 F.

---

[9] "[I] may grant a motion to dismiss only on grounds briefed by a party." *Onwudiwe v. Solomon Page Agency*, No. 24-CV-06977, 2026 WL 658388, at *2 (S.D.N.Y. Mar. 9, 2026). Since Defendants only move to dismiss Plaintiff's Title III ADA claim against the individual defendants at this stage, (Mem. 5–7), I do not directly dismiss this claim against the Trustees of Columbia University in the City of New York or Columbia Global Centers. However, in granting Plaintiff leave to amend, discussed *infra*, I note that many of the deficiencies in the Amended Complaint against the individual defendants may also apply to Plaintiff's claims against Columbia.

Supp. 2d 288, 305 (S.D.N.Y. 2013) (citing *Alfaro v. Wal–Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (per curiam)), *aff'd*, 747 F.3d 90 (2d Cir. 2014). "The determination of whether a duty exists is a careful inquiry whereby common sense, science and policy play an important role in determining whether to impute liability for the damage suffered by one onto another." *Gray v. Wackenhut Servs., Inc.*, 721 F. Supp. 2d 282, 288 (S.D.N.Y. 2010), *aff'd*, 446 F. App'x 352 (2d Cir. 2011) (citing *Waters v. N.Y.C. Housing Auth.*, 505 N.E.2d 922, 923–24 (1987)). The Amended Complaint does not describe what duty each Defendant owed to Plaintiff and which of Defendants' actions constituted a breach of that duty. Even construed liberally, the Amended Complaint seems to allege that the University and its employees had a duty to ensure they prepared correct paperwork—specifically, that they did not erroneously characterize Plaintiff as a "political prisoner" in a publication. However, Plaintiff does not cite to any case law, nor have I found any, that show this to be a "cognizable duty of care," *Dilworth*, 914 F. Supp. 2d at 458 (internal quotation marks omitted), under New York law or any law. Accordingly, I do not find that Defendants had a duty to ensure that each and every word of a publication was accurate.

A comparison to other cases involving negligence claims against universities is instructive. "The Second Circuit has held that a college does not have a duty of reasonable care in their response to a student's misconduct." *Silman v. Utica Coll.*, No. 14-CV-0432, 2016 WL 4275721, at *11 (N.D.N.Y. Aug. 12, 2016). Nor is a university obligated "to monitor the health of students" or "seek medical assistance on students' behalves." *La Russo*, 936 F. Supp. 2d at 305 (internal quotation marks omitted) (alterations adopted). Given that a university does not owe a duty in those circumstances, I do not find that a duty exists requiring a university or its employees to prepare accurate paperwork. To find otherwise would create a common law duty for a university to make sure that essentially all their student-related documents and paperwork

are accurate, lest they be liable to tort claims for any and all typographical or administrative errors. "Absent a duty of care, there can be no breach thereof and no liability," *Gray*, 721 F. Supp. 2d at 287, and therefore Defendant's motion to dismiss Plaintiff's negligence claim is GRANTED.[10]

Second, Plaintiff does not plausibly allege that their various health issues were the proximate result of Defendants' conduct. Plaintiff does not allege that either Defendant Amrou or Zelin was aware that Plaintiff was concerned about their physical or mental health based on the label of "political prisoner." Indeed, Plaintiff's email to Amrou characterizes the political prisoner description as a "minor factual issue," and Plaintiff suggests different phrases that "might be more precise." (Doc. 21-2.) Plaintiff states that these are "[j]ust some thoughts," and even apologies for the "inconvenience" of their request, and states that otherwise, the website is an "incredible landing page." (*Id.*) This email does not suggest that Plaintiff had any serious concerns about being described as a political prisoner, and surely nothing that would suggest their subsequent health issues from the description were reasonably foreseeable.

Plaintiff also fails to plausibly allege negligence claims against the University and Defendant Bollinger. Plaintiff emailed President Bollinger that the description of them as a political prisoner "deprives [Plaintiff] chances of [them] ever going back to China, and [Plaintiff] fear[s] persecution from the Chinese authority." (Doc. 21-3 at 1.) Although this allegation seems to make Plaintiff's injuries arguably more reasonably foreseeable, they fail to allege that Defendant Bollinger had any involvement in the publication at issue, which is required for the negligence claim. Indeed, Plaintiff's email to Bollinger, which was sent on March 27, 2023,

---

[10] Plaintiff does not allege that Defendant Zelin had any involvement in Columbia's description of Plaintiff in a publication as a "political prisoner." Accordingly, even assuming that Zelin owed Plaintiff some sort of duty, the Amended Complaint contains no allegations of any purported breach.

appears to be an appeal to reinstate their status as a master's degree student after the appeal to Dean Carlos Alonso was unsuccessful. (*See* Am. Compl. ¶¶ 18–19.) Such an appeal relates more to Plaintiff's federal claims—namely that Defendants failed to accommodate their disability—which I dismiss against the individual defendants for other reasons. *See supra* § IV.A.

In short, Plaintiff fails to allege that Defendants owed any relevant, cognizable duty of care, breached that duty, or that their injuries were proximately caused by that breach. Defendants' motion to dismiss Plaintiff's negligence claims is GRANTED and those claims are dismissed with prejudice because repleading would be futile under New York law. *See Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 374 (S.D.N.Y. 2016) (dismissing negligence claim with prejudice due to futility).

### C. *Leave to Amend*

Generally, leave to amend should be "freely give[n]," Fed. R. Civ. P. 15(a), and a *pro se* litigant in particular "should be afforded every reasonable opportunity to demonstrate that he has a valid claim," *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984). As such, complaints brought by *pro se* litigants are often dismissed without prejudice. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (noting that leave to amend should be given unless there is no indication that the *pro se* plaintiff will be able to assert a valid claim); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999) (per curiam) (stating that *pro se* complaints are generally "not dismiss[ed] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated" (internal quotation marks omitted)).

I find it is in the interest of justice to grant Plaintiff leave to amend their Title III ADA

and Rehabilitation Act claims.[11] Because a second amended complaint will completely replace, not supplement, the Amended Complaint, all facts or claims that Plaintiff wishes to assert must be included in the second amended complaint. Plaintiff is warned that, having received notice of the deficiencies in their pleadings, Plaintiff is unlikely to be granted another opportunity to amend. *See Douglas v. Abrams Child. Books*, No. 13-CV-2613, 2014 WL 12909009, at *10 (S.D.N.Y. Sept. 26, 2014) ("Plaintiff's failure to fix the defects, after being provided with notice of them, is alone sufficient ground to deny leave to amend *sua sponte*.") (collecting cases).

## V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss in part is GRANTED. Plaintiff's Title I and Title II ADA claims and their negligence claim are dismissed with prejudice against all defendants. Their ADA Title III and Rehabilitation Act claims against the individual defendants are dismissed without prejudice, with leave to amend within forty-five days of the filing of this Opinion & Order. The Clerk of Court is instructed to terminate the motion pending at Document 19.

Additionally, the Clerk of Court is directed to file this Opinion & Order under temporary seal because it contains personally identifiable information, including particularly sensitive health information. The Court will email the parties a copy of the temporarily sealed Opinion & Order. The parties shall notify this Court within thirty days concerning whether they believe the Opinion & Order should remain under seal and submit joint proposed redactions if necessary.

[11] I note that Plaintiff can seek free legal assistance from the Southern District of New York Legal Assistance Clinic which "provides free, limited-scope legal services to self-represented litigants (plaintiffs and defendants) with civil cases in the U.S. District Court." Legal Assistance Clinic, United States District Court Southern District of New York, https://www.nysd.uscourts.gov/attorney/legal-assistance (last visited Apr. 14, 2026).

SO ORDERED.

Dated: May 28, 2026
New York, New York

Vernon S. Broderick
United States District Judge